# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46359-8-II |
| Respondent, | |
| v. | |
| MICHAEL JOE SEVERSON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Michael Joe Severson appeals his convictions for four counts of first degree child molestation of K.C.-J. and J.N.K.[1]  Severson makes copious arguments including that (1) K.C.-J. was not competent to testify, (2) K.C.-J.'s hearsay statements were inadmissible, (3) the State committed several instances of prosecutorial misconduct, and (4) trial counsel rendered ineffective assistance.  We affirm.

## FACTS

Michael Severson met S.C., the mother of K.C.-J. and J.N.K., through a mutual friend.  S.C. was working a graveyard shift and needed help taking care of K.C.-J. and J.N.K. who were four and ten years old, respectively.  Severson eventually moved into S.C.'s apartment.  The children referred to Severson as "Mikey."  V Verbatim Report of Proceedings (VRP)  (April 15, 2014) at 383.  S.C., who was taking methadone, spent most of the day in her bedroom sleeping.

---

[1] We use initials to identify the minor victims and certain witnesses under this court's General Order 2011–1 to protect the victims' privacy.

Bill Campbell lived in another apartment in the same complex and eventually moved in with S.C., the children, and Severson. Campbell saw interactions between Severson and the girls that concerned him. One night Campbell witnessed J.N.K. hugging Severson and sitting on the couch "[l]ike a boyfriend and girlfriend would," around 1:00 AM. IV VRP (April 14, 2014) at 291. Campbell also witnessed K.C.-J. straddling Severson on the couch several times. At trial, Campbell testified, "The hair stood up on my neck, and it just bothered me. I won't even lay with my own kid like that. Not that it's inappropriate, but in my opinion, it was inappropriate." IV VRP (April 14, 2014) at 293-94.

Mike Thomas was friends with S.C., the girls, and Severson. One day, while Thomas was watching K.C.-J. play in his yard he saw her hit herself repeatedly in her groin area. He asked her why she was hitting herself, and K.C.-J. responded, "Mikey does it." V VRP (April 15, 2014) at 457. Thomas described K.C.-J.'s action as mimicking male masturbation. After that episode, Thomas began paying close attention to Severson's interactions with the girls and noticed that Severson would rub K.C.-J.'s upper inner thigh while she sat on his lap and frequently seemed possessive and controlling of the girls. Shortly thereafter, Thomas expressed his concerns about Severson's interactions with the girls to S.C., stating that he thought Severson was "grooming" the girls. V VRP (April 15, 2014) at 458.

After Thomas expressed his concerns to S.C., S.C. talked to Campbell, and then she sat each girl down individually and asked if Severson had ever made them feel uncomfortable.

K.C.-J. told S.C. that Severson made her uncomfortable and disclosed that Severson had rubbed her "no-no."[2,3] V VRP (April 15, 2014) at 402.

After her conversation with the girls, S.C. called law enforcement which started an investigation. Each child underwent a medical examination and a forensic interview. Keri Arnold conducted video-recorded forensic interviews with each girl. The State charged Severson with two counts of first degree child molestation of J.N.K., and two counts of first degree child molestation of K.C.-J.

At a pretrial hearing, the State asked the trial court to rule three out-of-court statements made by K.C.-J. to S.C., Thomas, and during the forensic interview, admissible as child hearsay under RCW 9A.44.120, and to find K.C.-J. competent to testify at trial.[4] Severson made no objection to the admission of the three statements under RCW 9A.44.120 or to K.C.-J.'s competency to testify at trial. The trial court ultimately found the statements satisfied the *Ryan* reliability test, and found K.C-J. competent to testify at trial. *State v. Ryan*, 103 Wn.2d 165, 173-77, 691 P.2d 197 (1984).

---

[2] S.C. testified that K.C.-J. and J.N.K. refer to their vaginal area as a "no-no" because nobody is supposed to touch it.

[3] J.N.K.'s comments to Carter were not admitted at trial.

[4] The primary purpose of the pretrial hearing was to determine whether K.C.-J.'s three statements were sufficiently reliable under the *Ryan* test to be admitted as child hearsay. *State v. Ryan*, 103 Wn.2d 165, 173-77, 691 P.2d 197 (1984). To be admissible at trial, RCW 9A.44.120 requires that the child hearsay be sufficiently reliable and that the child either testify at the proceedings, or if the child is unavailable as a witness that there be corroborative evidence of the act(s) mentioned in the hearsay statements. To satisfy the second requirement for the admissibility of K.C.-J.'s hearsay statements, the court addressed K.C.-J.'s competency to stand trial, applied the requisite five-factor *Allen* test, and determined K.C.-J. was competent. *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967).

At trial, Campbell and Thomas testified as described above. K.C.-J. testified that a "bad thing" had happened to her with Severson in their living room, describing that Severson touched her "no-no" and would not stop when she asked him to. IV VRP (April 14, 2014) at 164. J.N.K. also testified that Severson had done "bad things" such as touching her "no-no." IV VRP (April 14, 2014) at 207. Arnold testified about the forensic interviews she conducted with K.C.-J. and J.N.K., and the video recording of her interview with K.C.-J. was admitted into evidence.

Severson testified in his defense, and denied inappropriately touching either K.C.-J. or J.N.K. Severson also testified that he may have accidentally touched the girls' vaginal areas.

A jury later returned a verdict of guilty on all counts. Severson appeals.

ANALYSIS

I. K.C.-J's COMPETENCY

Severson argues that the trial court erred by finding K.C.-J. competent to testify. Severson failed to preserve the issue of K.C.-J.'s competency for appeal by conceding it at the pretrial hearing.

We generally will not consider a claimed error that was not raised in the trial court. RAP 2.5(a).[5] This allows the trial court to correct any error called to its attention, thus avoiding needless appeals and retrials. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

At the pretrial hearing regarding K.C.-J.'s hearsay statements, Severson made no objection to K.C.-J.'s competency. Rather, Severson's counsel stated:

---

[5] RAP 2.5(a) excepts "manifest error[s] affecting a constitutional right," however Severson makes no argument, nor presents any facts, suggesting any such error occurred.

> I don't have any specific objections to the finding that [K.C.-J.] is competent. I think she is certainly able to relate her memory and facts and answer questions, so I believe she is competent. She is available.
>
> . . . .
>
> You know, again, I don't object. I don't dispute that she is not [sic] competent. I believe she is competent, but I think we need to make that finding.
>
> . . . .
>
> I believe she was competent . . . in my judgment at least.

II VRP (April 9, 2014) at 123, 129-30.

K.C.-J. testified at the pretrial hearing and again at trial. Severson made no objection at any time to K.C.-J.'s competence, and as his comments at the pretrial hearing show, he conceded that K.C.-J. was competent to testify. As a result, Severson failed to preserve this issue for appeal and we do not address it.[6]

## II. K.C.-J.'S OUT-OF-COURT STATEMENTS

Severson argues that the trial court erred by admitting K.C.-J's three out-of-court statements made to S.C., to Arnold, and to Thomas, as child hearsay under RCW 9A.44.120. We hold that Severson failed to preserve the issue of K.C.-J.'s out-of-court statements' admissibility by failing to object to them at the pretrial hearing.

As explained above, an appellate court generally will not consider a claimed error that was not raised in the trial court. RAP 2.5(a).[7] A party objecting to the admission of evidence

---

[6] We address Severson's ineffective assistance of counsel arguments below.

[7] Although RAP 2.5(a) excepts "manifest error[s] affecting a constitutional right," there is no constitutional violation in admitting child hearsay statements when, as here, the child testifies at trial and is available for cross-examination. *State v. Leavitt*, 111 Wn.2d 66, 71, 758 P.2d 982 (1988); *State v. Stevens*, 58 Wn. App. 478, 486, 794 P.2d 38, *review denied*, 115 Wn.2d 1025 (1990).

must make a timely and specific objection in the trial court. ER 103. Failure to object precludes raising the issue on appeal.

Here, the trial court held a pretrial hearing outside the jury's presence regarding the admissibility of K.C.-J's out-of-court statements. At the hearing, Severson's counsel explained:

> I'm going to be frank with the Court. I would just ask the court to go through the *Ryan* factors. I don't have any specific arguments that these statements should not be admitted. I think the Court can go through the analysis of these factors and just make a record, but I don't have any specific objections.

II VRP (April 9, 2014) at 122-23. The court found the *Ryan* factors were satisfied and ruled the out-of-court statements admissible.

Because Severson did not timely object to the admission of K.C.-J's out-of-court statements, he failed to preserve this issue and we do not address it.

### III. DETECTIVE EGGLESTON'S TESTIMONY

Severson argues the trial court erred by admitting improper perpetrator profile testimony from Detective Eggleston. We disagree because Severson did not object to Detective Eggleston's testimony as improper profile testimony, and therefore he did not properly preserve this issue for appeal.

As a general rule, perpetrator profile testimony is improper because it carries with it the "implied opinion that the defendant is the sort of person who would engage in the alleged act, and therefore did it in *this* case too." *State v. Braham*, 67 Wn. App. 930, 939, n.6, 841 P.2d 785 (1992). However, Severson did not object to Detective Eggleston's testimony on this basis at

trial. Instead, he objected to the relevance of the State's line of questioning.[8] A party may only assign error on appeal based on the specific ground of the evidentiary objection at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020, 106 S. Ct. 1208, 89 L. Ed. 2d 321 (1986). An objection to the admission of evidence based on relevance fails to preserve the issue for appellate review based on improper perpetrator testimony. *See Guloy*, 104 Wn.2d at 422. Consequently, we hold that Severson did not preserve this issue for appeal.

## IV. PROSECUTORIAL MISCONDUCT

Severson argues that the State committed several instances of prosecutorial misconduct including improperly eliciting witnesses' opinions of guilt, violating motions in limine, and by making improper closing argument. We disagree.

To prevail on a prosecutorial misconduct claim, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn. 2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the verdict. 172 Wn.2d at 442-43. In analyzing prejudice, we do not look at the comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007).

A defendant who fails to object to the prosecutor's improper act at trial waives any error, unless the act was so flagrant and ill-intentioned that an instruction could not have cured the

---

[8] Severson objected that the line of questioning was irrelevant and asked that it be excluded. The State responded that the questioning provides context for Severson's inconsistent statements and establishes the rapport between Severson and Detective Eggleston. The trial court ruled, "I will allow just a little bit more, Counsel." VI VRP (April 21, 2014) at 665.

resulting prejudice. *Thorgerson*, 172 Wn.2d at 443. In this instance, a defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. 172 Wn.2d at 455.

A.      *Improper Opinion of Guilt Testimony*

Severson argues the State committed prosecutorial misconduct by twice eliciting improper opinion testimony as to Severson's guilt. Specifically, he argues the prosecutor improperly asked Campbell to give his opinions about Severson's interactions with the children, and asked Thomas about his concerns for the children and why he did not want to talk about the allegations in front of the girls. Because Campbell's testimony was not an improper opinion of guilt, and a timely objection to Thomas's testimony would have allowed the trial court to cure any potential prejudice, we disagree.

A witness expresses opinion testimony if the witness testifies to beliefs or ideas rather than the facts at issue. *State v. Demery*, 144 Wn.2d 753, 760, 30 P.3d 1278 (2001). Generally, no witness may offer opinion testimony regarding the guilt or veracity of the defendant or the credibility of a witness; such testimony is unfairly prejudicial "because it '[invades] the exclusive province of the [finder of fact].'" 144 Wn.2d at 759 (internal quotation marks omitted) (quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993)).

1. *Campbell's Testimony*

On direct examination, the prosecutor asked Campbell about the interactions he witnessed between Severson and the children. Campbell described a time he walked by their open apartment door and saw Severson and J.N.K. sitting together on the couch. The prosecutor

asked, "So at that time, that just made you just take a double look?" IV VRP (April 14, 2014) at 291. Campbell responded, "Yeah. That—kind of concerning and kind of creeped out about it. I backed up and looked." IV VRP (April 14, 2014) at 291. Later, the prosecutor asked, "What else did you see?" IV VRP (April 14, 2014) at 292. Campbell described other instances, after he had moved into the same apartment as Severson, S.C., and the children, where K.C.-J. would lie on top of Severson on the couch. The prosecutor asked, "And why did seeing that make you uncomfortable?" To which Campbell responded, "Because—I don't know. Because he—it just—I don't know. The hair stood up on my neck, and it just bothered me. I won't even lay with my own kid like that. Not that it's inappropriate, but in my opinion, it was inappropriate." IV VRP (April 14, 2014) at 293-94.

Severson argues that these statements constituted improper opinions of guilt, and he cites *State v. Olmedo*, 112 Wn. App. 525, 49 P.3d 960 (2002) to support his argument. There, Division Three of this court held that a witness's testimony as to whether a propane tank was approved by the United States Department of Transportation was improper opinion of guilt testimony because whether the tank was approved was a core element of the charges against the appellants. 112 Wn. App. at 532. But nothing about Campbell's testimony goes directly to a core element of the charges against Severson. Campbell simply relayed what he had seen, and noted that he felt the way Severson sat with K.C.-J. was inappropriate. That Campbell interpreted what he saw as inappropriate does not equate to Campbell stating that Severson appeared to be making sexual contact as required to be guilty of child molestation. See RCW 9A.44.083.

Severson cannot show that Campbell's statements were improper opinions of guilt. Thus, the prosecutor did not commit misconduct in eliciting these statements and Severson's claim on this ground fails.

2. *Thomas's Testimony*

Severson also argues the prosecutor committed misconduct by eliciting improper opinion of guilt testimony from Thomas. Severson failed to preserve this issue.

During Thomas's testimony, both Severson and the prosecutor asked Thomas several questions about any conversations he had with S.C., Campbell, or others about Severson's alleged abuse and whether they talked about it in front of the girls. On redirect, the prosecutor asked Thomas the following:

> [State]: Even in your mention of the defendant's name, would that cause the girls to be upset?
> [Thomas]: Well, they would make faces and didn't want to talk about him.
> [State]: Okay. Because it didn't make them happy to talk about being abused?
> [Thomas]: That's the way it seemed, yes.
> [State]: I have nothing further.

V VRP (April 15, 2014) at 481. Severson did not object.

Severson argues that Thomas's comment "that's the way it seemed, yes" constitutes improper opinion of guilt testimony. Br. of Appellant 40. Severson is correct that this statement constituted improper opinion of guilt because the prosecutor's question and affirmative answer necessarily presume that the children were abused. Whether the children were abused was an ultimate issue of fact in the case.

However, Severson fails to show that the prosecutor's actions engendered an incurable feeling of prejudice in the minds of the jury. Had counsel objected at trial, the court could have

10

issued a curative instruction to obviate any potential prejudice. Moreover, the jury was properly

instructed that it was the sole judge of witness credibility and was not bound by witness opinions

or the lawyer's statements.[9] *State v. Montgomery*, 163 Wn.2d 577, 595-96, 183 P.3d 267 (2008).

Absent evidence that the jury was unfairly influenced, we presume that the jury followed the

court's instructions. 163 Wn.2d at 596. Severson makes no showing that Thomas's answer to

the prosecutor's improper question engendered an incurable feeling of prejudice in the minds of

the jury that a curative instruction would not have obviated, and therefore his prosecutorial

misconduct claim on this ground fails.

B.      *"Grooming" Testimony*

Severson also argues the State committed prosecutorial misconduct by improperly

eliciting Thomas's opinion, in violation of a motion in limine, that Severson was "grooming" the

children. We disagree.

---

[9] Jury instruction 1, in part, read:
> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony. . . . It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

Clerk's Papers (CP) at 29.

During motions in limine, Severson moved to exclude any testimony regarding the term "grooming" or any other behavioral terms used to describe preparatory conduct in child sex offenders. The State explained it did not intend to elicit opinion testimony about grooming, but was planning to introduce Thomas's statement to S.C. that he thought Severson was grooming the girls as the basis for S.C. then questioning the girls about Severson. The court granted the motion in part, explaining:

> I will allow you to elicit the word "grooming" only in the conversation between the witness and the mother with the limiting instruction that it's not being offered for the truth of the matter asserted but simply as a description of what he believes was occurring. Because there has to be some reason that—I mean, whether we used "grooming" or believed he was acting inappropriately, I think the State's entitled to bring that out because you can't look at these two gentlemen's observation in a vacuum. . . . I don't want them giving opinions as to the fact that they believed he was grooming these children as part of their general testimony but only to the mother in terms of why they had these concerns.

I VRP (April 8, 2014) at 26-27.

At trial, the State asked one question of Thomas involving the word "grooming." V VRP (April 15, 2014) at 458. The questioning was as follows:

> [State]: When you talked to [S.C.], did you express your concerns about the defendant's interactions with the girls?
> [Thomas]: Yes.
> [State]: At that time, did you express any concern over grooming?
> [Thomas]: Yes, I did.

V VRP (April 15, 2014) at 458. This questioning came shortly after S.C. testified that Thomas's "grooming" comment was the catalyst for her decision to question her daughters. The question was precisely within the trial court's ruling on Severson's pretrial motion regarding "grooming." The State asked Thomas only what he did, not his opinion as to whether Severson was "grooming" the children.

We hold that Severson's prosecutorial misconduct claim based on the State's violation of the trial court's order in limine fails because the prosecutor's questions to Thomas did not violate the order.

C.      *Closing Argument*

Severson further contends that the prosecutor committed prosecutorial misconduct during closing argument by referencing uncharged criminal conduct, and by inviting the jury to convict on improper grounds. We agree that some of the prosecutor's comments were improper, but hold that they were not so flagrant and ill-intentioned as to be incurable.

We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). We focus less on whether the prosecutor's misconduct was flagrant or ill-intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). In closing argument, prosecutors are afforded wide latitude to draw and express reasonable inferences from the evidence. *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203.

First, Severson contends the prosecutor referenced uncharged criminal conduct by stating:

> And remember, as [Arnold] told you, disclosing sexual abuse, it's not a moment in time. You don't disclose and it's over. It's a process. It's an ongoing process. And you probably haven't even heard everything the defendant did because it is a process, and it's a process that these two little girls are going to have to live with for the rest of their life.

VII VRP (April 22, 2014) at 699. Severson argues that this statement is similar to what happened in *State v. Boehning*, 127 Wn. App. 511, 519-23, 111 P.3d 899 (2005).

In *Boehning*, the prosecutor told the jury that several other charges were dropped prior to trial because the child victim witness was not comfortable talking about it with a group of strangers. 127 Wn. App. at 519. There, the prosecutor made the previous disclosures of other sexual acts a central theme in his closing argument, using it to bolster his argument that the child's testimony was consistent and arguing that more serious sexual crimes had occurred. 127 Wn. App. at 519-21.

Unlike in *Boehning*, here the prosecutor's comment about the process of disclosure was not a reference to concrete disclosures to other parties or uncharged crimes which were inadmissible at trial. Rather, the prosecutor was referencing the testimony of Arnold that, for many children, disclosing sexual abuse is a process that happens over the course of many years. The prosecutor's argument was based on reasonable inferences drawn from the evidence presented at trial and was not improper.

Severson also argues that during the State's closing argument the prosecutor improperly encouraged the jury to rely on Thomas's and Campbell's testimonies as evidence of guilt. We agree that this line of argument was improper, but hold that it was not incurable and did not affect the jury's verdict.

The prosecutor referenced Thomas's and Campbell's testimony and used it to argue Severson's guilt:

> This is a man who looks at these little girls as sexual beings, as things that he can use as his sexual toys. And that's why Mike Thomas'[s] radar went off, and that's why Bill Campbell's radar went off. . . .
>
> When you look at each and every thing the defendant has done, and you consider Mike's concerns and you consider Bill Campbell's concerns, and you

consider what these girls who loved the defendant have described enduring, it all adds up to the same thing. The defendant is guilty of molesting those little girls.

VII VRP (April 22, 2014) at 711, 724. In rebuttal, the prosecutor used the expression, "Where there's smoke, there's fire," arguing, "[t]here is a lot of smoke from Mr. Severson. There's smoke in the form of Bill Campbell and Mike Thomas, and they just knew something was off. And when [S.C.] sat those girls down, they disclosed one after the other." VII VRP (April 22, 2014) at 749.

These arguments went beyond the evidence and inferred that Thomas and Campbell had valid opinions that Severson was molesting the children. This was improper. However, in light of all the evidence, Severson cannot show that the prosecutor's misconduct resulted in a substantial likelihood of affecting the jury verdict. The State's case against Severson did not heavily rely on Thomas's or Campbell's testimony. Rather, the jury heard direct testimony from both K.C.-J. and J.N.K. describing their molestation. The jury also watched the video recording of K.C.-J.'s forensic interview where she recounted the molestation in detail. As both Severson and the prosecutor ultimately recognized in their closing arguments, this case turned on the credibility of K.C.-J., J.N.K., and Severson. The feelings and opinions of Thomas and Campbell were not central pieces of evidence in proving Severson guilty beyond a reasonable doubt.

Additionally, the record shows that the prosecutor repeatedly reminded the jury that proving every element of the crime beyond a reasonable doubt was the State's burden to bear. As we stated above, the jury was properly instructed that it was the sole judge of witness credibility and was not bound by witness opinions or the lawyer's statements.

15

Given the strength of the State's evidence and the court's instructions to the jury, there is no substantial likelihood that the prosecutor's comments caused prejudice to Severson that could not have been cured by a curative instruction, or that any misconduct materially affected the outcome of the trial. Accordingly, we hold that Severson's claim of prosecutorial misconduct on this ground fails.

D.    *Cumulative Prosecutorial Misconduct*

Finally, Severson argues that cumulative instances of prosecutorial misconduct violated his right to a fair trial. We disagree.

Although "'[t]he cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect,'" such is not the case here. *State v.Lindsay*, 180 Wn.2d 423, 443, 326 P.3d 125 (2014) (internal quotation marks omitted) (quoting *In re Personal Restraint of Glasmann*, 175 Wn.2d 696, 707, 286 P.3d 673 (2012)). "[T]he doctrine does not apply where the defendant fails to establish how claimed instances of prosecutorial misconduct affected the outcome of the trial or how combined claimed instances affected the outcome of the trial." *Thorgerson*, 172 Wn.2d at 454. As discussed above, although we find some of the prosecutor's conduct troublesome, given the strength of the State's evidence and the court's jury instructions, we conclude that the prosecutor's limited instances of misconduct did not deny Severson his right to a fair trial.

V.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Severson makes several ineffective assistance of counsel claims. These claims fail.

To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice.

16

*State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, Severson must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show prejudice, Severson must show a reasonable probability that, but for counsel's purportedly deficient conduct, the outcome of the trial would have differed. 153 Wn.2d at 130. If Severson fails to establish either prong of the ineffective assistance of counsel test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

To demonstrate ineffective assistance of counsel based on the failure to object, the defendant must show (1) that the trial court would have sustained the objection if raised, (2) an absence of legitimate strategic or tactical reasons for failing to object, and (3) that the result of the trial would have been different. *See State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

A.     *Defense Counsel Was Not Ineffective For Conceding K.C.-J.'s Competency*

Severson argues that to the extent trial counsel conceded K.C.-J's competency, counsel rendered ineffective assistance. We disagree. Because any objection to K.C.-J.'s competency would have been futile, Severson's claim fails. *See Johnston*, 143 Wn. App. at 18.

The threshold for witness competency is very low. Washington courts presume that all witnesses are competent until proved otherwise by a preponderance of the evidence. *State v. Brousseau*, 172 Wn.2d 331, 341, 259 P.3d 209 (2011). Anyone who is incapable of receiving just impressions of the facts or relating them truly is not competent to testify. RCW 5.60.050(2);

CrR 6.12(c); *State v. S.J.W.*, 170 Wn.2d 92, 100, 239 P.3d 568 (2010). Although a child's age is not determinative of her capacity as a witness, five factors must be found before a child can be declared competent to testify:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which [she] is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words [her] memory of the occurrence; and (5) the capacity to understand simple questions about it.

*In re Dependency of A.E.P.*, 135 Wn.2d 208, 223, 956 P.2d 297 (1998) (quoting *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967)). Intelligence, not age, is the proper criterion to use in determining the competency of a young child.[10] *Allen*, 70 Wn.2d at 692; *see also State v. Bailey*, 52 Wn. App. 42, 757 P.2d 541 (1988) (child who was three at time of abuse was competent), *aff'd*, 114 Wn.2d 340 (1990); *State v. Hunsaker*, 39 Wn. App. 489, 693 P.2d 724 (1984) (children who were four and a half and two and a half at time of alleged molestation were competent to testify a year later).

Determining a child's ability to meet the five *Allen* factors rests primarily with the trial judge who sees the child, notices her manner, and considers her capacity and intelligence. *Allen*, 70 Wn.2d at 692. "There is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness." *State v. Borland*, 57 Wn. App. 7, 11, 786 P.2d 810 (1990), *disapproved on other grounds by State v. Rohrich*, 132 Wn.2d 472, 939 P.2d 697 (1997). These matters are not reflected in the written

---

[10] K.C.-J. was six years old at the time she testified.

record, and their determination will not be disturbed absent a manifest abuse of discretion.[11] *Allen*, 70 Wn.2d at 692; *see also State v. Swan*, 114 Wn.2d 613, 645, 790 P.2d 610 (1990).

Severson argues that K.C.-J. failed to meet three *Allen* factors: that K.C.-J. understood her obligation to speak the truth, that K.C.-J. had the mental capacity to receive an accurate impression of the molestation, and that K.C.-J. had sufficient memory to retain an independent recollection the molestation.

1. *K.C.-J. Understood Her Obligation To Speak the Truth*

Severson argues that K.C.-J. gave inconsistent accounts in her forensic interview and at the pretrial hearing, and therefore that she lacked the ability to understand what "truth" means. Br. of Appellant at 20.

Inconsistencies in a child's testimony do not necessarily call into question witness competency. *State v. Carlson*, 61 Wn. App. 865, 874, 812 P.2d 536 (1991). Instead, such inconsistencies generally relate to the witness's credibility and the weight to give his or her testimony. 61 Wn. App. at 874.

Additionally, the trial court and the State questioned K.C.-J. at length, providing ample opportunity to observe her demeanor and her ability to answer questions.

After hearing K.C.-J.'s testimony at the pretrial hearing, the trial court opined:

---

[11] Severson argues that we should review the trial court's ruling on K.C.-J's competency de novo because we have access to the video-recording of K.C.-J's pretrial interview that was viewed at the pretrial hearing. We disagree because (1) the video was not included in the record on appeal and (2) the video-recording was not the only evidence the trial court relied on in determining K.C.-J's competency. K.C.-J. testified at the pretrial hearing and although we have a transcript of that proceeding, the written record does not provide the same insight into K.C.-J.'s manner or intelligence that the trial court was able to discern in person. *Allen*, 70 Wn.2d at 692.

> [B]ased on her testimony here today and the colloquy that the Court went into in regards to her taking an oath and understanding the difference between telling the truth and telling a lie, I do find she is competent to stand trial.

II VRP (April 9, 2014) at 130.

### 2. *K.C.-J. Had Mental Capacity To Receive an Accurate Impression of the Molestation and Had Sufficient Memory To Recollect It*

Severson further argues that K.C.-J. did not have "the mental capacity at the time of the occurrence 'to receive an accurate impression of it,' and/or lacked 'a memory sufficient to retain an independent recollection.'"  Br. of Appellant 24 (quoting *Allen*, 70 Wn. 2d at 692).  Again, we disagree.

The charging document alleged that the sexual abuse happened during the time Severson lived with S.C. and the girls.  At the pretrial hearing, K.C.-J. was asked several questions about other things that happened around the time of the alleged incidents.  If a child can relate contemporaneous events, the court can infer the child is competent to testify about the abuse incidents as well.  *A.E.P.*, 135 Wn.2d at 225.  Here, K.C.-J. was able to describe the types of activities she and her sister would do with Severson; she could recall playing with Thomas's dog, and talking to S.C. and Arnold about the alleged incidents.  Thomas testified that K.C.-J. would often play with his dog during that time period.  Thus the evidence supports that K.C.-J. could receive accurate impressions during the period in which the events occurred.

During a pretrial hearing concerning K.C.-J.'s statements and competence, the court considered testimony and discussed the *Allen* factors appropriately.  Ultimately, the trial court found that K.C.-J. was testimonially competent in that she understood the obligation to speak the

truth on the witness stand, she had appropriate mental capacity and memory, she had the capacity to express her memories in words, and she had the capacity to understand and answer questions.

There is nothing in the record to suggest that had counsel not conceded K.C.-J.'s competency and rather objected to it, that the trial court would have come to a different conclusion. As such, Severson cannot show any deficiency or prejudice from his trial counsel's decision to concede K.C.-J.'s competency. Therefore, we hold that Severson's ineffective assistance of counsel claim on this ground fails.

B.    *Defense Counsel Was Not Ineffective for Failing To Contest the Introduction of K.C.-J.'s Out-of-Court Statements.*

Severson argues his trial counsel rendered ineffective assistance by failing to object to the proffered child hearsay statements. We disagree.

RCW 9A.44.120 provides for the admission of child hearsay statements when (1) the statements describe sexual abuse of the child; (2) the trial court finds, in a hearing conducted outside the jury's presence, that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and (3) the child either testifies at the proceedings or is unavailable as a witness. *State v. Woods*, 154 Wn.2d 613, 623, 114 P.3d 1174 (2005) (plurality opinion).

Because K.C.-J testified and was available for cross-examination, the issue is whether her statements were sufficiently reliable.[12]  In *State v. Ryan*, 103 Wn.2d at 173-77, our Supreme

---

[12] Severson also claims that because K.C.-J was not competent, she was "unavailable," and corroboration was necessary to admit her hearsay statements. Br. of Appellant 28, n.10. Because K.C.-J was competent to testify, we do not reach the issue of corroboration because

Court set forth nine factors for the trial court to consider in determining whether child hearsay statements have sufficient indicia of reliability: (1) whether there was an apparent motive to lie, (2) the declarant's general character, (3) whether more than one person heard the statements, (4) the statements' spontaneity, (5) the declaration's timing and the relationship between the declarant and the witness, (6) whether the statements contained express assertions of past fact, (7) whether cross-examination could show the declarant's lack of knowledge, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement.[13]  103 Wn.2d at 173-77.  Not every factor need be satisfied; it is enough that the factors are "substantially met."  *Woods*, 154 Wn.2d at 624.

Severson argues in a footnote that the trial court should have applied the *Ryan* factors to each statement individually, rather than collectively.  The plain language of the child hearsay statute contemplates consideration of the reliability of each individual statement.  *State v. Stevens*, 58 Wn. App. 478, 486-87, 794 P.2d 38 (1990).  Therefore, we review the reliability of the statements to S.C., the video-recorded forensic interview, and the statements to Thomas individually.

---

RCW 9A.44.120(2)(b) requires corroboration only when the child does not testify.  *Woods*, 154 Wn.2d at 623, n.1.

[13] Factors six and seven no longer apply.  *See State v. Leavitt*, 111 Wn.2d 66, 75, 758 P.2d 982 (1988) (Every statement a child makes concerning sexual abuse will be a statement relating a past fact.); *State v. Stange*, 53 Wn. App. 638, 647, 769 P.2d 873, *review denied*, 113 Wn.2d 1007 (1989) (cross-examination could in every case possibly show error in the child hearsay statement).

1. *K.C.-J's Statements to S.C.*

Severson argues that K.C.-J.'s statements to S.C. were unreliable because they failed to meet several *Ryan* factors. We disagree.

a. *No Motive To Lie and General Good Character*[14]

Severson argues that the motive to please her mother undermines the truthfulness of K.C.-J.'s statements.

The trial court found that K.C.-J. had no apparent motive to lie. The record supports the trial court's finding. K.C.-J. testified that she had fun with Mikey, and that he cooked for her and played with her. After hearing K.C.-J. testify at the pretrial hearing, the trial court noted:

> [T]here is certainly no apparent motive to lie. She even today spoke of [Severson] not in a negative term or with negative thoughts necessarily, and I think she is trustworthy in the sense that I didn't find her as someone who had been coached or had that kind of indicia of someone who had been propped up to say certain statements because she was—did not use sophisticated language or clich[és] in terms of her testimony.

II VRP (April 9, 2014) at 130-31.

Contrary to Severson's assertion, nothing in the record suggests that S.C.'s emotions gave K.C.-J. motive to fabricate her statements to S.C.

Severson also argues that K.C.-J.'s young age and variations in her narrative indicates she was not of good general character.

Any inconsistencies in K.C.-J.'s accounts affect the weight of her evidence, not its admissibility. *Woods*, 154 Wn.2d at 621. We rely on the fact-finder, before whom the witness

---

[14] The court may consider these two factors collectively because they inquire about a declarant's apparent motive to lie and general character.

appeared, to consider "the manner in which the child recounts the events, the child's memory regarding other events (including current events), and the child's demeanor," as well as the child's capacity and intelligence. 154 Wn.2d at 624, 617.

The trial court and the State questioned K.C.-J. at length, providing ample opportunity to observe her demeanor and her ability to answer questions. The trial court was in the best position to observe K.C.-J. and to assess her character and whether she had any motive to lie. The trial court ultimately found that K.C.-J. was generally of good character. As previously discussed, the court found, and the record reflects, that K.C.-J. was testimonially competent in that she understood the obligation to speak the truth on the witness stand.

We hold that the evidence supports that K.C.-J. had no apparent motive to lie and had good general character.

b. *More Than One Person Heard K.C.-J.'s Statements*

Severson also argues that K.C.-J.'s statements are unreliable because there is conflicting testimony as to whether Campbell was present during S.C.'s conversation with K.C.-J.[15]

Even assuming that no one other than S.C. heard K.C.-J.'s statements, the statements were nonetheless reliable. In *State v. Kennealy*, 151 Wn. App. 861, 883, 214 P.3d 200 (2009) we held that when more than one person hears a similar story of abuse from a child, the hearsay statement is more reliable. There, while the children's initial hearsay statements were heard by only one person, each child told the same accusations about Kennealy to more than one person over time. 151 Wn. App. at 883. Similarly here, the evidence shows, that K.C.-J.'s statements to

---

[15] There were inconsistencies in Carter and Campbell's testimony as to whether or not Campbell was present when Carter talked to the girls about Severson.

her mother, Thomas, and Arnold, though at different times with different purpose, were generally consistent.

We hold the evidence supports that the statements were reliable.

c. *K.C.-J's Statements Were Spontaneous*

Severson argues that because S.C. sat K.C.-J. down and questioned her about Severson, that K.C.-J.'s statements to her were not spontaneous.

Statements made in response to questioning are spontaneous so long as the questions are not leading or suggestive. *Kennealy*, 151 Wn. App. at 883. In *Kennealy*, we addressed the spontaneity of child hearsay statements almost identical to K.C.-J.'s statements to S.C. 151 Wn. App. at 883.

Here, as in *Kennealy*, S.C. merely asked if Severson had ever made K.C.-J. feel uncomfortable, and K.C.-J. answered. While the setting of the statements was not spontaneous, the details K.C.-J. offered were not suggested and were "spontaneously" volunteered. *See State v. Madison*, 53 Wn. App. 754, 759, 770 P.2d 662 (1989).

We hold the evidence supports that K.C.-J.'s statements were spontaneous as defined by the case law.

d. *The Timing of K.C.-J's Statements and Her Relationship to S.C. Support a Reliability Finding*

Severson argues that the relationship between K.C.-J. and S.C.—mother and child—cuts against the reliability of K.C.-J.'s statements to S.C. Severson further argues that because S.C.'s conversation with K.C.-J. happened the same day that S.C. allegedly argued with Severson and Thomas told S.C. about his concerns, S.C. was predisposed to confirm what she had been told.

First, courts apply the *Ryan* factors to assess the reliability of the child's statements, not the recollection of the statement-relating witness. *State v. McKinney*, 50 Wn. App. 56, 62, 747 P.2d 1113 (1987). Secondly, Severson had ample opportunity at trial to challenge S.C.'s recollection on cross-examination.

Moreover, we have held when the witness is in a position of trust with a child, this factor is likely to enhance the reliability of the child's statements, not detract from it. *Kennealy*, 151 Wn. App. at 884. Here, K.C.-J. made her statements to her mother with whom she was in a relationship of trust.

The evidence shows that there was nothing about the timing of K.C.-J.'s statements nor anything about the relationship between K.C.-J. and her mother to suggest an improper motive. This *Ryan* factor weighed in favor of admitting K.C.-J.'s child hearsay statements.

We hold that the record supports the trial court's findings that K.C.-J.'s child hearsay statements to S.C. substantially satisfied the *Ryan* factors, particularly that her statements were reliable. Therefore, had counsel objected, his objection would likely have been overruled. Thus, Severson's ineffective assistance of counsel claim on this ground fails.

2. *K.C.-J.'s Statements During the Video-Recorded Interview*

Severson argues that K.C.-J.'s statements in the video-recorded forensic interview failed to meet several *Ryan* factors and therefore were unreliable and would not have been admitted had counsel objected. We disagree.

a. *No Motive To Lie and General Good Character*

Severson argues that K.C.-J.'s motive to please her mother endured and tainted K.C.-J.'s truthfulness in the forensic interview.

As discussed above, the trial court found, and the record supports, that K.C.-J. had no apparent motive to lie and was a person of general good character.

b. *K.C.-J's Statements Were Spontaneous*

Severson argues that "the video-recorded interview was not a spontaneous utterance." Br. of Appellant 32.

As previously discussed, statements made in response to questioning are spontaneous so long as the questions are not leading or suggestive. *Kennealy*, 151 Wn. App. at 883. Here, Arnold described in detail, and the trial court saw on video, the method of questioning utilized during the forensic interview. Arnold described the technique as "always to ask very open-ended questions and then simple follow-up questions to clarify the details." II VRP (April 9, 2014) at 114.

We hold that the record supports that K.C.-J.'s recorded statements were spontaneous as defined by case law.

c. *The Surrounding Circumstances Do Not Show Misrepresentation*

Severson appears to argue that the surrounding circumstances showed misrepresentation, but argues only that "the child's mutually exclusive stories are flat-out alarming." Br. of Appellant 33. The trial court found that based on the totality of the circumstances surrounding the making of K.C.-J.'s statements, there is no reason to believe K.C.-J. misrepresented Severson's involvement. As we previously discussed, the record supports that while K.C.-J.'s description of events varied, they were generally consistent. We hold that the record supports that surrounding circumstances do not show misrepresentation.

27

Because the *Ryan* factors are substantially satisfied, we hold that had counsel objected to the admission of K.C.-J.'s hearsay statements during the forensic interview, his objection would likely have been overruled, and therefore Severson's ineffective assistance of counsel claim on this ground fails.

3. *K.C.-J.'s Statements to Thomas*

Severson argues that K.C.-J.'s statement to Thomas that "Mikey does it," after he asked her why she repeatedly hit herself in the crotch, does not describe the kind of act contemplated by RCW 9A.44.120.[16] Br. of Appellant 33. We disagree.

RCW 9A.44.010(2) defines sexual contact as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." Severson relies heavily on Thomas's interpretation of the hitting as a "male masturbatory gesture," and argues that this does not constitute sexual contact as defined by RCW 9A.44.010(2). Whether Thomas's interpretation of K.C.-J.'s gesture as a male masturbatory gesture was accurate, or whether her statement meant that Severson made such contact with K.C.-J., the statement can be reasonably interpreted as describing an act of sexual contact, as defined by RCW 9A.44.010(2).

We hold that had counsel objected to the admission of K.C.-J.'s statements to Thomas it would not have been sustained, and therefore counsel was not ineffective on this ground.

---

[16] In his final sentence addressing the issue, Severson contends the "statement was not reliable," but offers no argument or analysis to support his claim. Br. of Appellant 33. We do not address it. *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008), *rev'd on other grounds*, 170 Wn.2d 117 (2010) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."); RAP 10.3.

Counsel's decisions not to pursue what would have been futile objections to the admission of K.C.-J.'s three out–of-court statements did not fall below an objective standard of reasonableness and were therefore not deficient. We hold that Severson's ineffective assistance of counsel claim on these grounds fails.

C.      *Failure To Object to Evidence of an Uncharged Physical Assault*

Severson argues defense counsel rendered ineffective assistance by failing to object to the introduction of K.C.-J.'s video-recorded statement that Severson physically assaulted her while she was riding her bike.

Because this claim relies on facts outside the record on appeal we do not consider it.[17] *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

D.      *Failure To Object to Impeachment Evidence.*

Severson argues that defense counsel rendered ineffective assistance by failing to object to Arnold's testimony that J.N.K. "'disclosed witnessing some abuse with [K.C.-J.], as though [sic] it was different, to some degree, from what [K.C.-J.] disclosed.'" Br. of Appellant 55 (alteration in original) (quoting V VRP (April 15, 2014) at 350). We disagree.

Severson contends that Arnold's statement that J.N.K. told Arnold she had witnessed some abuse with K.C.-J. constituted impeachment evidence because when J.N.K. testified she was asked, "Did you ever see anything happen with [K.C.-J.]?" and she responded, "No." Br. of

---

[17] Severson did not include the video-recorded interview in the record on appeal. The party presenting an issue for review has the burden of providing an adequate record to establish such error. *See* RAP 9.2(b). We may decline to address a claimed error when faced with a material omission in the record. *State v. Wade*, 138 Wn.2d 460, 465, 979 P.2d 850 (1999). There was no discussion of any physical assault during a bike ride during live witness testimony or in any closing argument.

Appellant 55 (quoting IV VRP (April 14, 2014) at 215). Severson argues that had counsel

objected, a limiting instruction would have been given, cautioning the jury to limit its

consideration of the statement to J.N.K.'s credibility, and there was no strategic or tactical reason

not to object and request such a limiting instruction.

Contrary to Severson's argument, there are two obvious tactical reasons trial counsel did

not object to Arnold's statement. First, counsel may have not objected in order to avoid bringing

undue attention to the statement. Our courts have specifically recognized that such a strategy can

be described as a legitimate trial tactic. *State v. Gladden*, 116 Wn. App. 561, 568, 66 P.3d 1095

(2003); *see also State v. Kloepper*, 179 Wn. App. 343, 356, 317 P.3d 1088, *review denied* 180

Wn.2d 1017 (2014) ("The decision to not object to or seek a cure for damaging evidence is a

classic tactical decision."). Second, counsel may have allowed the testimony to show another

example of the inconsistencies in the children's accounts. Counsel's defense theory centered on

the inconsistencies of the children's testimony and arguing that they were not credible. In

closing, counsel specifically brought up Arnold's statement that J.N.K. told her she had

witnessed K.C.-J.'s abuse as an example of an inconsistent and therefore not credible statement.

We hold that not objecting to Arnold's statement was a legitimate trial tactic and

therefore Severson's ineffective assistance claim on this ground fails.

E.      *Failure To Object to Opinion of Guilt Testimony at Trial*

Severson also contends that his counsel was ineffective for failing to object to several

instances of allegedly improper opinion testimony.

Counsel's choice of whether to object is a classic example of trial tactics, and only in

egregious circumstances will failure to object constitute incompetence of counsel justifying

reversal. *Kloepper*, 179 Wn. app. at 355-56. As previously noted, to demonstrate ineffective assistance of counsel based on the failure to object, the defendant must show (1) that the trial court would have sustained the objection if raised, (2) an absence of legitimate strategic or tactical reasons for failing to object, and (3) that the result of the trial would have been different. *See Johnston*, 143 Wn. App. at 19-20.

It is improper for a witness to express a personal opinion regarding the guilt of the accused. *State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007). Such impermissible opinion testimony about a defendant's guilt may constitute reversible error because it violates the defendant's constitutional right to a jury trial, which includes an independent determination of the facts by the jury. *See* 159 Wn.2d at 935-37. In order to determine whether statements constitute impermissible opinion testimony, we consider the circumstances of the case, including: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact. *Demery*, 144 Wn.2d at 759. "[T]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence is not improper opinion testimony." *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993)).

1. *Campbell's Testimony*

Severson argues that his counsel was ineffective for failing to object to Campbell's improper opinion of guilt testimony. As previously discussed, Campbell's statements did not constitute improper opinion of guilt testimony and therefore Severson cannot show that the trial

court would have sustained the objection had it been raised. Therefore Severson's ineffective assistance of counsel claim on this ground fails.

2. *Thomas's Testimony*

Severson also argues that counsel rendered ineffective assistance by failing to object to Thomas's improper opinion of guilt testimony.

As previously discussed, the prosecutor's question, "Because it didn't make them happy to talk about being abused?" and Thomas's answer, "That's the way it seemed, yes," constituted improper opinion of guilt testimony. V VRP (April 15, 2014) at 481. Had counsel objected, the trial court likely would have sustained the objection.

However, to succeed on his ineffective assistance of counsel claim, Severson must still show prejudice. To prove prejudice, Severson must show a reasonable probability that, but for counsel's purportedly deficient conduct, the outcome of the trial would have differed. *Reichenbach*, 153 Wn.2d at 130. Severson cannot meet his burden.

In light of all the evidence presented at trial, Thomas's testimony was a relatively minor piece of evidence. The jury heard direct testimony from both J.N.K. and K.C.-J. giving first-hand accounts of similar incidents of molestation. The jury also saw video of K.C.-J.'s forensic interview wherein she recounted the abuse. Severson testified in his own defense and explained some accidental touching occurred over the girls' vaginal areas, but denied any inappropriate sexual touching. Ultimately this case turned on the credibility of J.N.K., K.C.-J., and Severson. Given the direct testimony heard by the jury, Thomas's opinion testimony cannot reasonably be said to have changed the jury's verdict.

Additionally, the trial court properly instructed the jury that it was the sole judge of witness credibility and not bound by witness opinions. Absent evidence that the jury was unfairly influenced, we presume that the jury followed the court's instructions. *Montgomery*, 163 Wn.2d at 596. Severson makes no showing that Thomas's answer to the prosecutor's improper question unfairly influenced the jury verdict.

Severson cannot prove that he was prejudiced by the prosecution's elicitation of Thomas's opinion of guilt testimony, and therefore his ineffective assistance claim on this ground fails.

### 3. *"Grooming" Testimony*

Severson argues that counsel rendered ineffective assistance by failing to object when S.C. said that Thomas had told her Severson was "grooming" the girls, and when Thomas confirmed that is what he told S.C.

As previously discussed, the grooming testimony at trial was well within the trial court's ruling on the motion in limine excluding all "grooming" evidence. Severson cannot show that the trial court would have sustained the objection had it been raised, and thus Severson cannot prove prejudice. Therefore, Severson's claim on this ground fails.

### 4. *S.C.'s Testimony*

Severson argues that his counsel was ineffective for failing to object to S.C.'s improper opinion of guilt testimony when she testified that other people had expressed concern about the way Severson talked to the kids, and that it seemed there was more that K.C.-J. was not telling her when S.C. asked K.C.-J. about Severson.

Both of these statements were minor moments in S.C.'s testimony. Severson fails to show that counsel's decision not to object was not a legitimate and intentional decision not to emphasize innocuous evidence. *Kloepper*, 179 Wn. App. at 355. Moreover, given the abundance of other evidence put before the jury describing Severson's actions, there is nothing to suggest that had the jury not heard these inconsequential statements the outcome of trial would have differed.

We hold that counsel did not render ineffective assistance by not objecting to S.C.'s statements.

F. *Eliciting Detective Eggleston's Opinion of Guilt*

Severson argues that his counsel rendered ineffective assistance by eliciting Detective Eggleston's opinion that Severson was guilty. We disagree.

On cross-examination, Severson's counsel tried to minimize the impact of Detective Eggleston's testimony that Severson's story changed over the course of the interrogation by highlighting the length and repetitive nature of the questioning, and by suggesting that Detective Eggleston's interrogation tactics were results oriented. Counsel asked, "Do you think it's possible for a person to finally give the answer that they think the person wants to hear to make the inquiry stop; do you think that ever happens?" VI VRP (April 21, 2014) at 679. Counsel continued, "And that's part of the purpose of interrogation, isn't it, to get to the answer that you want to hear?" VI VRP (April 21, 2014) at 681. When Detective Eggleston disagreed, counsel continued to suggest that because Detective Eggleston had already talked to S.C. and had seen the forensic interviews of the children that he was focused on getting a confession from

Severson. Counsel asked, "You thought you had your guy; you wanted to get a confession out of Mr. Severson. Isn't that the purpose for the interrogation?" VI VRP (April 21, 2014) at 681.

On appeal, Severson argues this question was a direct elicitation of Detective Eggleston's opinion of Severson's guilt. As is clear from the record, this question was not an improper elicitation of opinion of guilt, but rather counsel's clear strategy to undermine the impact of the lead detective in the case's testimony about his interrogation.

Because Severson cannot show that counsel's cross-examination of Detective Eggleston constituted anything other than a legitimate trial tactic, he cannot show deficient performance and we hold that his ineffective assistance of counsel claim on this ground fails.

G.      *Failure To Impeach S.C.*

Severson argues counsel rendered ineffective assistance by conceding that S.C.'s previous convictions for theft and falsification of insurance were inadmissible for impeachment under ER 609. We disagree.

Under ER 609, evidence that a witness previously committed a crime of dishonesty can be admissible for impeachment purposes. In general, evidence of a prior conviction is admissible if (1) the crime was punishable by more than one year in prison and the court determines that its probative value outweighs the prejudice to the party against whom the evidence is offered, or (2) the crime involved dishonesty or a false statement. ER 609(a). Crimes of theft involve dishonesty and are per se admissible for impeachment purposes. *State v. Ray*, 116 Wn.2d 531, 545, 806 P.2d 1220 (1991).

In pretrial motions the parties discussed a motion to exclude the criminal histories of the State's witnesses. It appears S.C.'s record reflected a theft crime from Tacoma Municipal in

2008 and a conviction for falsification of insurance. Severson's counsel noted, "I think at this point, Your Honor, I don't see any crimes that are admissible under 609. I'll do a little research between now and then." I VRP (April 8, 2014) at 19. Counsel ultimately did not attempt to use S.C.'s criminal history as impeachment evidence.

Severson cannot demonstrate that counsel's failure to use S.C.'s past crimes to impeach her prejudiced him. The extent of counsel's cross-examination put S.C.'s credibility before the jury even without evidence of her past crimes. He repeatedly asked S.C. about her use of methadone and its effects, including the significant time she spent in her bedroom or sleeping, implying she was an absent parent. Additionally, the record provides no information about the circumstances of S.C.'s prior convictions, and we cannot speculate that its admission would have substantially affected the jury's opinion of her credibility.

S.C.'s credibility was not central to Severson's case as he argues on appeal. She was not an eyewitness to any abuse. Her most impactful testimony was reiterating K.C.-J.'s hearsay statements about Severson's alleged actions, and these statements were corroborated by K.C.-J.'s own testimony and the forensic interview. S.C.'s credibility was neither pure nor imperative to the jury finding Severson guilty in this case, and had counsel admitted evidence of her past theft conviction the outcome of the case would not have changed.

Because Severson cannot show prejudice because of counsel's failure to impeach S.C. with her past convictions we reject his ineffective assistance claim on this ground.

H.    *Failure To Object to Prosecutor's Improper Closing Argument*

Severson argues that he received ineffective assistance of counsel because of his defense counsel's failure to object to the prosecutor's statements during closing argument. Insofar as the

36

prosecutor's statements during her closing argument were improper, counsel's failure to object constitutes deficient performance.

However, Severson's claim for ineffective assistance of counsel can succeed only if he can show that counsel's failure to object to the prosecutor's improper statements prejudiced him. Severson cannot meet this burden.

Considering the prosecutor's closing argument in its entirety, her improper emphasis of Thomas and Campbell's testimony was not the focus of her argument. That "something was off" about Severson's interactions with the girls was certainly a theme she utilized, but even the prosecutor herself recognized that such speculations were insufficient to find Severson guilty beyond a reasonable doubt. Instead, she focused primarily on K.C.-J. and J.N.K.'s testimony and their disclosure of abuse. As previously discussed, the case turned on the credibility of K.C.-J., J.N.K., and Severson. Considering all the evidence presented at trial and the instructions given the jury, there is no reasonable probability that had counsel objected the result of the proceeding would have been different.

Although some of the prosecutor's statements during closing argument were improper, taking all circumstances into account, counsel's failure to object does not undermine our confidence in the outcome of Severson's trial. Thus, because Severson fails to establish prejudice, he fails to establish ineffective assistance of counsel on this ground.

I.      *Cumulative Ineffective Assistance of Counsel*

Finally, Severson argues that these alleged instances of ineffective assistance, taken together, cumulatively deprived him of a fair trial. We disagree.

Ultimately, the case came down to the credibility of J.N.K., K.C.-J., and Severson. The jury was properly instructed that they alone were the judges of witness credibility and that the State bore the burden of proving every element of the charges beyond a reasonable doubt. Both K.C.-J. and J.N.K. testified to specific instances of sexual abuse. Additionally, the jury saw the video-recorded forensic interview of K.C.-J. detailing Severson's abuse, and heard S.C. testify to the initial disclosure made by K.C.-J. The deficiencies of counsel's performance did not change the fact that the jury heard detailed testimony of abuse from the witnesses and was properly instructed on its duty in weighing the evidence.

Because Severson cannot show that any possible errors by his trial counsel prejudiced the result of the proceeding, Severson cannot establish that cumulative ineffective of assistance deprived him of a fair trial.

## VI. CUMULATIVE ERROR

Severson also argues that the overall cumulative effect of the trial court's errors, prosecutorial misconduct, and ineffective assistance of counsel denied him his right to a fair trial. We disagree.

The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). The defendant bears the burden of proving an accumulation of error of sufficient magnitude that retrial is necessary. *State v. Yarbrough*, 151 Wn. App. 66, 98, 210 P.3d 1029 (2009) (*citing In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835, 870 P.2d 964). But the doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252,

38

279, 149 P.3d 646 (2006). As previously discussed, the jury heard an abundance of evidence and was properly instructed on how to weigh that evidence. None of Severson's claimed errors by the trial court, the prosecutor, or his trial counsel undermined his right to a fair trial or the validity of his convictions. In light of all the evidence, we reject Severson's argument that the cumulative effect of these errors supports reversal of his conviction. Accordingly, we affirm Severson's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Sutton, J.